IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SCOTT LANDRESS,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )        1:15CV354
                                   )
TIER ONE SOLAR LLC,                )
SPV SOLAR ONE LLC,                 )
ISAAC B. HORTON III, and           )
AHMED SHAIKH,                      )
                                   )
            Defendants.            )

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Plaintiff, Scott Landress, brings this diversity action against Defendants Tier One Solar, LLC ("TOS")[1], SPV Solar One LLC ("SPV"), Isaac B. Horton III ("Horton"), and Ahmed Shaikh ("Shaikh"), alleging state law claims, including violations of the North Carolina Securities Act. Defendants SPV, Horton, and Shaikh have each moved to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, or in the alternative, to stay this action. (ECF Nos. 15, 17, 19.) For the reasons set forth below, the Court grants in part Defendants' motions to the extent that the motions request a stay of this action, and the Court denies the motions to the extent that they seek dismissal of Plaintiff's claims.

---

[1] To date, TOS has not entered an appearance in this case.

# I.    BACKGROUND

TOS is a subsidiary of parent company, SPV. (ECF No. 4 ¶ 21.) At the time of the transactions at issue, Defendant Horton served as Chief Executive Officer of TOS, (ECF No. 4-1 at 19), as well as "founder and managing partner of SPV." (ECF No. 4 ¶ 16.) Defendant Shaikh served as Chief Operating Officer of TOS as well as a principal of SPV who oversaw SPV's day-to-day operations. (*Id.* ¶ 17.) James Mason ("Mason"), who is not a party to this action,[2] served as the Chief Financial Officer of TOS as well as a principal of SPV. (*Id.* ¶ 18.)

Mason, having had a prior business relationship with Plaintiff, approached him about investing in TOS. (*Id.* ¶ 24.) In his attempt to secure Plaintiff's investment, Mason made a number of representations to Plaintiff about TOS's solvency including: that TOS was solvent and able to repay Plaintiff's investment; that Horton had contributed "approximately $1.7 million in cash" to TOS; that, over a period of time, he (Mason) had personally invested $1.4 million in TOS; and that the other SPV/TOS Managers had likewise invested $1.5 million in TOS. (*Id.* ¶¶ 25–28.)

Ultimately, Plaintiff decided to invest $1 million in TOS. (*Id.* ¶ 29.) In exchange for this investment, Plaintiff, through Mutsy I, LLC ("Mutsy"), an entity which he "wholly own[s] and manag[es]," received secured and unsecured notes. (*Id.* ¶¶ 30, 31.) The parties executed a number of investment documents, including a Secured Convertible Promissory Note ("Secured Note") for $850,000 and accompanying Security Agreement, executed between Mutsy and TOS, and personally guaranteed by Mason, (*id.* ¶ 32; ECF No. 4-1 at 2). Each

---

[2] "Mason filed for bankruptcy protection on December 8, 2014," prior to this action being filed. (ECF No. 4 ¶ 11.)

document, except a Note Purchase Agreement, is signed by Isaac Horton as CEO on behalf of TOS and SPV, and by Alexander G. Fraser as Attorney-in-Fact on behalf of Mutsy and Scott Landress. (*See* ECF Nos. 4-1 at 19, 20; 4-2 at 10, 11; 4-3 at 2; 4-6 at 5, 6.) Each document is dated December 23, 2013. (ECF Nos. 4-1 at 2; 4-2 at 2; 4-3 at 2; 4-6 at 2.)

On April 30, 2014, Plaintiff notified TOS "that the principal amount ($850,000), the premium amount ($212,500), and the related legal fees of approximately $25,000 (as of that date) were due under the Secured Note." (ECF No. 4 ¶ 59.) In his Notice, Plaintiff "agreed to refrain from exercising his rights against TOS for five (5) business days to allow TOS the opportunity to negotiate an extension of the Secured Note's payment terms." (*Id.* ¶ 62.) At the expiration of this five-day period, Plaintiff sent two additional notices seeking "acceptable stand-still terms," or full payment under the terms of the Secured and Unsecured Notes, including "accrued interest, post-default interest, and fees." (*Id.* ¶ 69.)[3]

Although Plaintiff did not receive any payments or "acceptable stand-still terms" in response to his notices, in November 2014, he did receive TOS and SPV financial statements "for the period ending December 31, 2013" which showed that "the sum total of the SPV/TOS Managers' investment in SPV and TOS was just $25,000, not $4 million or so as TOS represented." (*Id.* ¶¶ 71–73.) The SPV/TOS Managers obtained additional funding from other sources which they commingled, misappropriated, and used to pay to themselves in the form of "management fees," advances, and back pay, instead of repaying Plaintiff as

---

[3] While the record before the Court does not include copies of any of the notices and letters sent by Plaintiff to TOS demanding payment, for the purposes of this motion, the Court is required to accept the factual allegations in the Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

required under the investment documents. (*Id.* ¶¶ 75–80.) Plaintiff was paid $125,000 on September 2, 2014. (ECF No. 4-5 at 2.)

On December 8, 2014, Mason filed for personal bankruptcy triggering "a stay of judicial proceedings against [him]." (ECF No. 4 ¶ 82.) Shortly thereafter, on January 17, 2015[4], SPV, Horton, Shaikh, TOS, and Mason entered into a Confidential Settlement Agreement and Release ("Settlement Agreement") "to (i) restate the ownership interest of both SPV and TOS, (ii) confirm the liabilities and other obligations of both SPV and TOS, and (ii) [sic] release SPV Parties[5] and the TOS Parties from any and all claims as set forth herein." (ECF No. 4-7 at 1; *see also* ECF No. 4 ¶ 85.) The Settlement Agreement provides, in part, that: (i) a majority interest (77.5%) in TOS shall be held by Mason while a 1% interest in TOS shall be held by SPV, (ECF No. 4-7 ¶ 2); (ii) "TOS shall remain liable to . . . Scott Landress ("Landress") under that certain promissory note dated December 23, 2013," (*id.* ¶ 3); and (iii) the TOS parties indemnify the SPV Parties "from any and all lawsuits, liabilities, actions, causes of action, claims, demands, damages, costs, and debts of any kind whatsoever, both at law and in equity, whether known or unknown, which the TOS Parties ever had, now has or may have against [the SPV Parties]," (*id.* ¶ 8(a).) A few months after execution of the Settlement Agreement, Plaintiff filed this action.

Before the Court are: (i) SPV Solar One LLC's Motion to Dismiss Pursuant to Rule 12(b)(6) and 12(b)(7); (ii) Motion of Defendant Isaac B. Horton III to Dismiss Plaintiff's First

---

[4] Although "executed as of January 17, 2015," the Settlement Agreement states that it is "effective as of November 25, 2014." (ECF No. 4-7 at 1.)

[5] The Settlement Agreement identifies the "SPV Parties" as SPV, Horton, Shaikh and Mason. The "TOS Parties" are identified in the Settlement Agreement as TOS and Mason.

Amended Complaint;[6] and (iii) Motion of Defendant Ahmed Shaikh to Dismiss Plaintiff's First Amended Complaint. (ECF Nos. 15, 17, 19.) Neither Horton nor Shaikh provide an independent basis for dismissal, nor do they provide a brief in support of their motions to dismiss. Rather, Horton and Shaikh state in their motions that they "expressly rel[y] upon the Motion to Dismiss and supporting brief filed . . . by [SPV]," and they adopt and incorporate by reference "the arguments and authorities put forward by Defendant SPV in support of its Motion to Dismiss." (ECF No. 17 at 1; ECF No. 19 at 1.) Because SPV's motion and supporting brief addresses only Plaintiff's claims of control person liability (fourth cause of action), fraudulent conveyance (fifth cause of action), and piercing the corporate veil (sixth cause of action), and because no defendant argues for dismissal of the remaining causes of action, the Court will treat Horton's and Shaikh's motions as seeking dismissal as to the causes of action addressed by SPV only.[7]

---

[6] The Court notes that, prior to filing his motion to dismiss, Horton filed an Answer, (ECF No. 9). Under Federal Rule of Civil Procedure 12(b), a motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(7) is untimely when filed *after* the filing of an answer. *See* Fed. R. Civ. P. 12(b). However, under Rule 12(h)(2), the defenses of "[f]ailure to state a claim upon which relief can be granted [and failure] to join a person required by Rule 19(b) . . . may be raised . . . by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2); *see Edwards v. City of Goldsboro*, 178 F.2d 231, 243 (4th Cir. 1999). The Court will treat Horton's motion as a Rule 12(c) motion for judgment on the pleadings raising the defenses of failure to state a claim upon which relief can be granted and failure to join a required party. *Id.*

[7] Where a party fails to develop an issue in its brief, courts have deemed the issue waived and need not address its merits. *See Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012). Thus, the Court will not consider the remaining causes of action (namely, the First, Second, Third, Seventh, Eighth, and Ninth Causes of Action), which remain pending in this action.

Case 1:15-cv-00354-LCB-JLW   Document 34   Filed 03/21/17   Page 5 of 26

## II.    STANDARDS OF REVIEW

### A.   Rule 12(b)(7) Failure to Join a Party under Rule 19

Rule 12(b)(7) provides that an action may be dismissed for failure to join a party under Rule 19.  *See* Fed. R. Civ. P. 12(b)(7).  The moving party on a Rule 12(b)(7) motion to dismiss bears the burden of showing that an absent party is necessary and indispensable pursuant to Rule 19.  *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005).  "The inquiry contemplated by Rule 19 is a practical one" which is left "to the sound discretion of the trial court."  *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980).  The court must initially determine whether the absent party should be joined as a party to the action in accordance with the criteria set forth in Rule 19(a).  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250 (4th Cir. 2000).  If joinder of an otherwise required party is not feasible, the court must then determine whether, under Rule 19(b), the absent party is indispensable such that the action cannot proceed in that party's absence.  Fed. R. Civ. P. 19(b); *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512, 517 (M.D.N.C. 2008) (citing *Wood*, 429 F.3d at 92).  Generally, "courts are extremely reluctant to grant motions to dismiss based on nonjoinder, and dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."  *RPR & Assocs. v. O'Brien/Atkins Assocs., P.A.*, 921 F. Supp. 1457, 1463 (M.D.N.C. 1995), *aff'd*, 103 F.3d 120 (4th Cir. 1996).

### B.   Rule 12(b)(6) Failure to State a Claim

Under Rule 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Such a motion "challenges the legal sufficiency of a complaint," including whether it meets the pleading standard of Rule 8(a)(2).

6

*Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), thereby "giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court must accept all factual allegations in the Complaint as true, *id.*, and construe all factual allegations in the light most favorable to the plaintiff, *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

Generally, on a Rule 12(b)(6) motion to dismiss, a court cannot consider documents beyond the complaint without converting the motion into a motion for summary judgment. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). The court can, however, properly consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted). The Court will therefore consider the documents attached to, and referenced in, the Complaint, the authenticity of which is not challenged by any party.

## III. DISCUSSION

### A. <u>Mason Is A Necessary and Indispensable Party Under Rule 19</u>

Defendants first argue that, with regard to Plaintiff's claims of control person liability, fraudulent conveyance, and piercing the corporate veil, "Mason is a necessary party to these

claims," (ECF No. 16 at 9), and his joinder is not feasible, (*id.* at 12). Thus, according to Defendants, "this action should be dismissed or stayed." (*Id.*) Plaintiff argues, on the other hand, that Mason is neither a required nor indispensable party and his absence does not require that the Court dismiss or stay this case; rather, according to Plaintiff, the action should be allowed to proceed with the existing parties. (ECF No. 22 at 12–20.)

Pursuant to Rule 19, courts must engage in a two-pronged inquiry to determine whether joinder of a party should be required. *See* Fed. R. Civ. P. 19. "First, the district court must determine whether a party is 'necessary' to the action under Rule 19(a). If the court determines that the party is 'necessary,' it must then determine whether the party is 'indispensable' to the action under Rule 19(b)." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 210 F.3d at 249 (footnote omitted) (citing Fed. R. Civ. P. 19(a), (b)). "Only necessary persons can be indispensable, but not all necessary persons are indispensable." *Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1285–86 (4th Cir. 1994) (citing Fed. R. Civ. P. 19(b)). The court's determination of whether a party is necessary and indispensable is fact-specific and must rest upon "the practical potential for prejudice in the context of the particular factual setting presented by the case at bar." *Id.* "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999). Thus, "a decision whether to dismiss [under Rule 19] must be made pragmatically . . . rather than by procedural formula." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968).

Under Rule 19(a)(1), a person is a "required party" if:

(A) in the person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "Thus, Rule 19(a)(1)(A) focuses on the relief to existing parties, whereas Rule 19(a)(1)(B) focuses on the interest of the absent person and the effect, if any, his absence would have on either himself or the existing parties." *Pettiford*, 556 F. Supp. 2d 512 at 517.

1. <u>Mason is a required party under Rule 19(a)</u>

    a. *Controlling person liability claim under N.C. Gen. Stat. § 78A-56(c)*

Defendants argue that because Mason is responsible for making the alleged misrepresentations to Plaintiff prior to securing Plaintiff's investment, and because Mason allegedly knew that his statements to Plaintiff were false and misleading, "[t]o not have Mason in this action . . . limits the remedy that the Court can afford here in his absence." (ECF No. 16 at 9.) Defendants also argue that their liability "under N.C. Gen. Stat. § 78A-56(c) is secondary and contingent on the liability of an alleged misstatement made by Mason." *Id.*

The North Carolina Securities Act includes a "controlling person" provision which provides as follows:

Every person who directly or indirectly controls a person liable under subsection (a), (b), or (b1) of this

> section*, every partner, officer, or director of the person, every person occupying a similar status or performing similar functions, . . . who materially aids in the sale is also liable jointly and severally* with and to the same extent as the person, unless able to sustain the burden of proof that the person did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

N.C. Gen. Stat. § 78A-56(c)(1) (emphasis added).

Here, Plaintiff alleges that TOS solicited Plaintiff's investment, and that TOS is the party over whom SPV, Horton, and Shaikh act as controlling persons. (ECF No. 4 ¶¶ 126–132.) Thus, before there can be a finding as to the secondary liability of SPV, Horton, and Shaikh as controlling persons, there must be a determination as to the underlying liability of TOS. However, TOS has not made an appearance in this action and further is included as an asset of the bankruptcy estate in Mason's pending bankruptcy action in the Eastern District of North Carolina, as is a one-fifth interest in SPV.[8] In light of this, the Court would be unable to accord any relief to Plaintiff with respect to its claims against TOS in the instant action because any finding here as to TOS's potential liability would necessarily implicate and/or impact the ongoing bankruptcy proceedings. Such a finding as to TOS's potential liability here may also impair or impede Mason's ability to protect his interest in the subject of the action – TOS – given that, per the Settlement Agreement executed on January 17, 2015 between the

---

[8] The Court "may properly take judicial notice of matters of public record." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

SPV Parties and the TOS Parties, Mason holds a 77.5% membership interest in TOS, (ECF No. 4-7 ¶ 2).[9]

Plaintiff argues that Mason is not a required party as to this claim and the Court can provide complete relief because he seeks to hold SPV, Horton, and Shaikh "jointly and severally liable for TOS's sale of the notes using false and misleading statements." (ECF No. 22 at 13.) Although as a general rule, joint tortfeasors are not "necessary" or "indispensable" parties within the meaning of Rule 19,[10] the Court is required to consider "the practical potential for prejudice in the context of the particular factual setting presented by the case at bar," *Schlumberger Indus., Inc.*, 36 F.3d at 1286. In so doing, the Court concludes that any potential relief as to this claim would likely interfere with or, at the very least, be intertwined with, the pending bankruptcy court proceedings involving TOS, and would likely affect Mason's ability to protect his interest in TOS. Mason is, therefore, required for Plaintiff to proceed on his controlling person liability claim.

### b. *Fraudulent conveyance claim*

In his Complaint, Plaintiff alleges that the funds he invested into TOS were "commingled with SPV assets, and the SPV/TOS Managers began paying themselves more than $1 million under the pretext of supposed 'management fees,' '[a]dvance[s] towards expenses,' and '[b]ack pay.'" (ECF No. 4 ¶ 134 (alterations in original).) Plaintiff therefore

---

[9] Though the validity of the Settlement Agreement entered into by Defendants and Mason is unknown, under its terms SPV holds a 1% ownership interest in TOS, and Horton and Shaikh do not currently have any ownership interest in TOS. (ECF No. 4-7 ¶ 2.)

[10] *See* Fed. R. Civ. P. 19(a), advisory committee notes ("a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability"); *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) (per curiam) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit.").

seeks an order voiding TOS's illegal transfers to SPV, Horton, and Shaikh, and enjoining Defendants "from further disposing of TOS's assets and property – all of which are subject to Landress' security interest pursuant to the TOS Security Agreement." (*Id.* ¶¶ 139, 140; *see id.* at 40 ¶ (e); ECF No. 22 at 14.) Defendants argue that Plaintiff seeks "injunctive relief or [a] constructive trust over TOS assets [which] requires the presence of all SPV and TOS managers or else 'the court cannot accord complete relief amongst the parties.'" (ECF No. 16 at 9–10 (quoting Fed. R. Civ. P. 19(a)).)

In support of their argument Defendants cite *Allen ex rel. Allen v. Devine*, 670 F. Supp. 2d 164 (E.D.N.Y. 2009). In that case, the plaintiff sought joint and several monetary damages, as well as the creation of a constructive trust and an injunction preventing the defendants from using, selling, or transferring any funds obtained from plaintiff, or any assets obtained with plaintiff's funds. *Allen*, 670 F. Supp. 2d at 169. That court denied the defendants' Rule 12(b)(7) motion to dismiss as to plaintiff's claims for joint and several monetary damages; but, with respect to plaintiff's requests for equitable relief, the court found that the non-parties to whom the plaintiff alleged funds were improperly diverted were necessary in order to provide complete relief to the plaintiff. *Id.* at 169–70.

Here, Plaintiff argues in his response brief that, unlike the Plaintiff in *Allen*, he "does not seek a constructive trust, and [his] fraudulent conveyance claim does not require one." (ECF No. 22 at 14, 15.) Plaintiff does, however, seek to enjoin "the SPV/TOS Managers and SPV . . . from further disposing of TOS's assets and property – all of which are subject to Landress' security interest pursuant to the TOS Security Agreement." (ECF No. 4 ¶ 140.) Plaintiff has alleged that Mason is one of the SPV/TOS Managers, along with Horton and

Shaikh, (*id.* ¶ 2), and per the Settlement Agreement, Mason owns a majority interest in TOS, (ECF No. 4-7 ¶ 2). Thus, Mason has an interest in the subject of this action – TOS's assets – such that disposing of this action would likely affect his (Mason's) ability to protect his interest. *See* Fed. R. Civ. P. 19(a)(1)(B). Consequently, to the extent that Plaintiff seeks an injunction regarding the further disposition of TOS's assets, over which it appears Mason may own a majority interest, the Court finds that Mason is a required party.

### c. *Piercing the corporate veil* [11]

In his Complaint, Plaintiff seeks "an order allowing the piercing of TOS and SPV's corporate veil and finding SPV, Horton, and Shaikh fully and additionally liable for any judgment entered against TOS in this action." (ECF No. 4 at 40 ¶ (f).) Plaintiff nonetheless argues that Mason need not be joined as a party to this action and "[t]he Court may grant Landress the requested relief without joining any additional parties." (ECF No. 22 at 17.) Defendants contend that Mason is a shareholder of TOS and "[w]hen one is asking to disregard the corporate form and hold the shareholders liable, it naturally follows that all the shareholders should be a part of that action." (ECF No. 16 at 11.)

As a general rule, "a corporation is an entity, separate and distinct from its officers and stockholders, and . . . its debts are not the individual indebtedness of its stockholders." *DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976). However, under the equitable doctrine of piercing the corporate veil, in extraordinary circumstances,

---

[11] Plaintiff's Complaint characterizes piercing the corporate veil as a cause of action. However, as will be discussed in Section C. 3. below, piercing the corporate veil is not itself an independent cause of action but is a means of imposing liability on an underlying claim. *Shearson Lehman Hutton, Inc. v. Venners*, 165 F.3d 912, 1998 WL 761505, at *2 (4th Cir. 1998) (per curiam).

13

courts will disregard the corporate form, "exposing those behind the corporation to liability." *Keffer v. H.K. Porter Co.*, 872 F.2d 60, 64 (4th Cir. 1989). "The standard for piercing the corporate veil is high, but its purpose is to 'achieve an equitable result' by 'focus[ing] on reality and not form, on how the corporation operated and the [defendants'] relationship to that operation.'" *Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 587 (4th Cir. 2015) (first alteration in original) (quoting *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013)).

Here, per the Settlement Agreement executed on January 17, 2015 between the SPV Parties and the TOS Parties, SPV holds a 1% ownership interest in TOS while Mason holds a 77.5% membership interest in TOS.[12] (ECF No. 4-7 ¶ 2.) Thus, to the extent that Plaintiff seeks to pierce the corporate veil of TOS in order to "expos[e] those behind the corporation to liability," *Keffer*, 872 F.2d at 64, Mason, must be joined as a party to this action. In his absence, if Plaintiff were to prevail in his effort to pierce TOS's corporate veil, it would be impossible for this Court to "accord complete relief among existing parties." Fed. R. Civ. P. 19(a). Further, because TOS is property of the bankruptcy estate, if this Court were to proceed, there would likely be two independent courts making adjudications with respect to the same property, which could lead to inconsistent rulings.

Plaintiff argues that because he seeks to hold Defendants liable as joint tortfeasors, he need not join any additional parties. (*See* ECF No. 22 at 16.) This argument, however, is inapplicable given that, as Defendants argue, Plaintiff seeks to hold *all* managers and owners

---

[12] Under the terms of the Settlement Agreement, Horton and Shaikh do not currently have any ownership interest in TOS. (ECF No. 4-7 ¶ 2.)

of TOS liable for TOS's breaches and defaults. (ECF No. 16 at 10; ECF No. 4 ¶ 155.) Accordingly, the Court finds that Mason is a necessary party in order for Plaintiff to proceed under the corporate veil-piercing theory.

### 2. Mason is an indispensable party under Rule 19(b)

Having concluded that Mason is a required party as to Plaintiff's claims of control person liability and fraudulent conveyance, as well as Plaintiff's corporate veil-piercing theory of recovery, the Court must now determine whether Mason, as a necessary party, is also indispensable to this action such that, in his absence, this case cannot proceed.

Mason filed for bankruptcy on December 8, 2014, (ECF No. 4 ¶ 82), which triggered a bankruptcy stay of judicial proceedings against him, under 11 U.S.C. § 362.[13] (*Id.*) Plaintiff now states in his supplemental brief[14] that, on August 17, 2016, Mason was personally discharged by the Bankruptcy Court, and the automatic stay is no longer in effect. (ECF No. 32 at 2–3.) While the Court will take judicial notice that Mason was personally discharged in the bankruptcy action, Plaintiff's further statements regarding its effect are not supported by any independent evidence in the record. It appears, therefore, that Mason's ability to be joined in the instant action remains infeasible or, at best, questionable.

Under Rule 19(b), when joinder of a necessary party is not feasible, the court must decide "whether, in equity and good conscience, the action should proceed among the existing

---

[13] This statute provides that the filing of a bankruptcy petition "operates as a stay . . . of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a).

[14] On January 31, 2017, this matter was called for hearing on the pending motions to dismiss. Following the hearing, the parties submitted supplemental briefing, as ordered by the Court, on issues related to the pending bankruptcy action involving Mason.

parties or should be dismissed." Fed. R. Civ. P. 19(b).  In so doing, the court must consider the following factors:

> (1)    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2)    the extent to which any prejudice could be lessened or avoided by:
>       (A) protective provisions in the judgment;
>       (B) shaping the relief; or
>       (C) other measures.
> (3)    whether a judgment rendered in the person's absence would be adequate; and
> (4)    whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  "Dismissal of a case is a drastic remedy, however, which should be employed only sparingly." *Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

Defendants contend generally that Plaintiff's claims against SPV (and by adoption of SPV's brief, Plaintiff's claims against Horton and Shaikh as well), "should be dismissed or stayed because Mason is an indispensible [sic], unavailable party to the adjudication of this action and the rights of the other defendants."  (ECF No. 16 at 15.)  Plaintiff, on the other hand, argues that Mason is not an indispensable party because "Defendants are wholly liable to Landress for their roles in the scheme to defraud him, and the Court can grant Landress complete relief without impacting Mason."  (ECF No. 22 at 18.)

The Court finds that the Rule 19(b) factors do not weigh in Plaintiff's favor.  As noted above, Plaintiff seeks a damages award against TOS, Horton, and Shaikh with respect to the controlling person liability claim.  (ECF No. 4 at 39 ¶ (d).)  Also, as to Plaintiff's fraudulent

conveyance claim, he seeks to enjoin further disposition of TOS's assets. (*Id.* at 40 ¶ (e).) Further, Plaintiff seeks to pierce TOS's corporate veil to impose liability "for any judgment entered against TOS in this action." (*Id.* ¶ (f).) As such, any judgment rendered in Mason's absence regarding TOS's potential liability as to these claims would likely prejudice Mason as that corporation's majority shareholder. In addition, given Mason's role as TOS's majority shareholder, and the fact that TOS is included as an asset of the bankruptcy estate, it is unlikely that this Court could effectively tailor any potential relief as to these claims which would not impact the pending bankruptcy action, and which would lessen or avoid the impact to Mason, a non-party. Moreover, should Plaintiff prevail on these claims, it is unlikely that a judgment in Plaintiff's favor would be adequate given that the majority shareholder of TOS is not a party to this action and those who are parties to this action collectively own a mere 1% of TOS.

Notwithstanding the Court's findings above, the Court concludes that it is unlikely that Plaintiff would have an adequate remedy against the current Defendants for their alleged wrongdoings if these claims were summarily dismissed for nonjoinder. Accordingly, the Court will not dismiss this action for nonjoinder. The Court will, instead, consider whether the particular circumstances here warrant a stay of the action, pending the resolution of the bankruptcy case.

### B.  The Court Will Stay This Action

As recognized earlier, Mason filed for personal bankruptcy on December 8, 2014, thus triggering an automatic stay of judicial proceedings against him. (ECF No. 4 ¶ 82.) Defendants argue that if the Court does not dismiss this action, then it should, in the alternative, stay the case because: (i) Mason has agreed to indemnify Defendants against any

17

liability in this case, (ECF No. 16 at 13); (ii) aspects of the claims against Defendants "rests on the liability of Mason," (*id.* at 14); and (iii) "[t]o permit Plaintiff to take judgment against TOS . . . would allow Plaintiff to impermissibly leapfrog over other potential bankruptcy creditors (including Defendants)," (*id.* at 15). Here, Plaintiff has alleged nine (9) causes of action, eight (8) of which involve TOS and/or SPV, entities which are also involved in the pending bankruptcy action. Plaintiff nonetheless argues, in part, that a stay is not warranted here *under 11 U.S.C. § 362* because such a stay only bars actions against the debtor and does not extend to non-debtor third parties. (ECF No. 22 at 19.)

While Plaintiff is correct that an automatic bankruptcy stay under 11 U.S.C. § 362 applies only to the debtor and the debtor's estate, this Court has inherent discretionary power to stay proceedings in order to achieve equity and to ensure the efficient management of its docket, *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). Proper use of this authority requires the court to exercise its judgment "to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). These various factors include the interests of judicial economy, the hardship and equity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay. *See, e.g., White v. Ally Fin., Inc.*, 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013). Essentially, in considering whether to issue a stay, the Court "must weigh competing interests [of the parties]

and maintain an even balance." *Landis*, 299 U.S. at 254–55. "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom [the stay] is operative." *Williford*, 715 F.2d at 127. If a stay is appropriate, the court must keep it "within the bounds of moderation." *Landis*, 299 U.S. at 256.

The Fourth Circuit has recognized that there are cases in which the debtor and other non-debtor parties "are so intimately intertwined" so as to warrant a stay. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986). The court explained that there are "unusual situation[s]" in which "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." *Id.* at 999. An example of one such situation, as described by the court, "would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *Id.* Although the Fourth Circuit analyzed this in the context of extending an automatic bankruptcy stay under 11 U.S.C. § 362(a), the Court finds this reasoning instructive here given the unusual circumstances present in this case.

Here, the Settlement Agreement executed by the parties to this action includes a provision in which Mason agrees to indemnify Defendants against liability in this action. (ECF No. 4-7 ¶ 8(a).) Additionally, Plaintiff seeks relief against TOS and SPV, entities which are included as part of the debtor's estate in the pending bankruptcy proceeding. Also, Plaintiff has filed a claim as a creditor in that pending bankruptcy action. The permissibility of Plaintiff's claim there has yet to be decided and, if allowed, there is potential for double recovery by Plaintiff or, at a minimum, inconsistent rulings, particularly with respect to recovery from TOS if the case were to proceed.

As such, the Court finds that the interests of the parties in this action are intimately intertwined with Mason and his interest in TOS and SPV, entities which are subject to the bankruptcy proceeding. Such an overlap of parties and interests makes it likely that any action taken in this case would impact the ongoing bankruptcy proceeding or vice versa, as well as any interests that Mason may have in TOS and/or SPV. Moreover, since Plaintiff is named in the bankruptcy proceeding as a potential creditor, he has an interest in resolving all issues without the potential for overlap or inconsistent rulings. Therefore, in balancing the competing interests present in this case, the Court concludes that equity and the proper administration of these proceedings weigh heavily in favor of a stay pending the outcome of the Chapter 7 bankruptcy action in the United States District Court for the Eastern District of North Carolina.

**C. Rule 12(b)(6) Failure to State a Claim**

Defendants also seek dismissal of Plaintiff's Complaint which they contend fails to state a plausible claim for relief.

*1. Control person liability claim under N.C. Gen. Stat. § 78A-56(c)*

Defendants contend that, as to the substance of Plaintiff's claim of control person liability under N.C. Gen. Stat. § 78A-56(c), Plaintiff has failed to sufficiently allege that Defendants were control parties. To establish control person liability, Plaintiff must establish that Defendants "(1) had the 'power to control' the person or entity primarily liable under the applicable law, and (2) engaged in 'culpable conduct.'" *Andrews v. Fitzgerald*, 823 F. Supp. 356, 380 (M.D.N.C. 1993) (quoting *Walker v. Cardinal Sav. & Loan Ass'n,* 690 F. Supp. 494, 500 (E.D. Va. 1988)).

Defendants argue that "it is evident from [the Complaint] that Mason is primarily liable for the misstatements for which Plaintiff seeks liability and it is axiomatic that a company does not control its directors, rather, it is the other way around." (ECF No. 16 at 18.) Plaintiff argues, however, that "[a]s a control person of TOS, SPV cannot distance itself from misstatements TOS made through Mason." (ECF No. 22 at 8.) Furthermore, Plaintiff's Complaint contains a number of allegations about the Defendants' role as controlling persons of TOS. Specifically, the Complaint alleges that: (i) SPV is the parent company and alter-ego of its subsidiary, TOS (ECF No. 4 ¶ 21); (ii) "SPV, Horton, and Shaikh acted as controlling persons of TOS . . . and they materially aided in the sale of the Secured and Unsecured Notes to Landress," (*id.* ¶ 126); (iii) "SPV, as TOS's manager and alter-ego, exercised dominion and control over TOS" as a control person, (*id.* ¶ 132); (iv) "Horton is the CEO of TOS and, among other things, executed the Secured Note, Unsecured Note, and TOS Security Agreement on behalf of TOS," (*id.* ¶ 128); (v) "on information and belief, Horton knew of and authorized the materially false and misleading statements made to Landress to induce him to purchase the Secured and Unsecured Note," (*id.*); (vi) Shaikh is the COO and a manager of TOS who "participated in the discussions with Landress when TOS was trying to get him to invest," (*id.* ¶ 129); (vii) "Horton and Shaikh met with Landress in his home to solicit additional investments, and during that meeting they reiterated TOS's assurances about the SPV/TOS Managers' financial contributions," (*id.*); and (viii) "SPV, as TOS's manager and alter-ego, exercised dominion and control over TOS," (*id.* ¶ 132).

The Court finds that these allegations, taken as true, state a plausible claim that Defendants controlled the actions of TOS which ultimately caused Plaintiff's alleged injury.

*See* N.C. Gen. Stat. § 78A-56(c)(1) ("Every person who directly or indirectly controls a person liable [under this statute], . . . and every dealer or salesman who materially aids in the sale is also liable jointly and severally."). Accordingly, Defendants' motions to dismiss this cause of action will be denied.[15]

### 2. *Fraudulent conveyance claim*

To survive Defendants' Rule 12(b)(6) motion to dismiss his fraudulent conveyance claim, Plaintiff must sufficiently allege facts showing that Defendants transferred funds from TOS with the "intent to hinder, delay, or defraud" and are therefore voidable. N.C. Gen. Stat. § 39-23.4. Defendants argue that Plaintiff's Complaint contains only conclusory allegations which do not establish "a plausible basis for holding [the] conveyances, or lack thereof in the case of SPV distributions, to be fraudulent." (ECF No. 16 at 18–19.) The Court disagrees.

Plaintiff alleges the following in his Complaint: (i) that his investment funds were "commingled with SPV assets" and used by Defendants to pay "themselves more than $1

---

[15] In further support of their argument that Plaintiff's Complaint fails to state a claim for relief as to the control person liability claim, Defendants also argue that "the claim belongs to the investor Mutsy" because "the purchaser of the Secured Note is Mutsy, not Landress." (ECF No. 16 at 16, 17.) Plaintiff responds, in part, that "Landress is the sole member of Mutsy, which assigned its rights to Landress as of December 23, 2013." (ECF No. 22 at 11.) At this stage of the litigation, the Court accepts the well-pled allegations in the Complaint as true. The Complaint alleges that (i) Mutsy "is wholly owned and managed by Landress," (ECF No. 4 ¶ 31); and (ii) as of December 23, 2013, "Mutsy subsequently assigned all its rights and obligations under the investment documents to Landress," (*id.*). Further, as Plaintiff argues, the "Post-Closing Commitments" letter, executed by the parties on the same day as the other investment documents, references Landress as the purchaser of the notes. (ECF No. 22 at 10.) Specifically, the Letter states that it "confirm[s] the understanding among [TOS, SPV, Mason] and yourself regarding the certain commitments made to you by Tier One and SPV in connection with your purchase (through Mutsy I, LLC ("Mutsy") or another affiliate, together, "Landress") on the date hereof from Tier One, SPV Solar and/or Mason." (ECF No. 4-6 at 1.) To the extent that Defendants now seek to challenge whether Landress or Mutsy purchased the notes and/or whether there has been an effective assignment of rights, such an issue is to be determined on a more developed record.

million under the pretext of supposed 'management fees,' '[a]dvance[s] towards expenses,'' and "[b]ack pay," (ECF No. 4 ¶ 134 (alterations in original)); (ii) that the SPV/TOS Cash Statement he received from Defendants shows that "the amount and frequency of the SPV/TOS Managers' raiding of SPV/TOS funds increased significantly *after* TOS defaulted on its payment obligations" under the investment documents, (*id.* ¶ 135 (emphasis added)); (iii) that these withdrawals "render[ed] TOS insolvent and unable to meet its obligations to Landress," (*id.* ¶ 136); (iv) that "the SPV/TOS Managers – and SPV itself – continue to plunder the TOS coffers" knowing that TOS is insolvent "and with the intent to hinder and delay payment to Landress and ultimately deprive him of his investment in TOS," (*id.* ¶ 137); and (v) that "SPV and the SPV/TOS Managers have failed to make any distributions to [Plaintiff] and instead have used SPV to raid TOS and pay themselves despite their obligations" under the investment documents, (*id.* ¶ 138).

In setting forth these allegations, Plaintiff has sufficiently pled facts to support his claim that Defendants transferred funds from TOS in order to "hinder, delay, or defraud Plaintiff. The Court therefore finds that, at this stage of the litigation, Plaintiff's allegations, taken as true, state a plausible claim of fraudulent conveyance.

### 3. *Piercing the corporate veil*

Defendants also seek dismissal of Plaintiff's claim to pierce TOS's corporate veil because, in part, it is "based on the conclusory statement that TOS and SPV are mere instrumentalities of one another." (ECF No. 16 at 19.)

As an initial matter, Defendants argue that "[p]iercing the corporate veil is not a cause of action and should be dismissed when pled as such." (ECF No. 16 at 19.) Defendants are

correct that piercing the corporate veil is not an independent cause of action and, instead, serves as "a means of imposing liability on an underlying cause of action." *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (quotation omitted). Such a method of imposing liability, however, "is analogous to a claim for punitive damages or loss of consortium" in that it "is dependent on proving an underlying claim." *Strawbridge v. Sugar Mountain Resort, Inc.*, 243 F. Supp. 2d 472, 479 (W.D.N.C. 2003). Courts routinely analyze a Plaintiff's allegations at the motion to dismiss stage to determine whether Plaintiff has sufficiently alleged sufficient facts to justify disregarding the corporate entity and thus, survive a motion to dismiss. *See, e.g., Ademiluyi v. PennyMac Mortg. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 519 (D. Md. 2013) (considering defendants' Rule 12(b)(6) motion to dismiss and finding that the "plaintiff's conclusory allegations in the Complaint, even if proven, are not sufficient to justify the piercing of the corporate veil"); *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 469–70 (D. Del. 2010) (finding that, at the motion to dismiss stage, plaintiffs have sufficiently alleged facts to support the alter ego doctrine for piercing the corporate veil); *Richmond v. Indalex, Inc.*, 308 F. Supp. 2d 648, 655–59 (M.D.N.C. 2004) (analyzing whether, on a motion to dismiss, Plaintiff has alleged facts sufficient to establish derivative liability and pierce defendant's corporate veil). The Court will therefore consider whether Plaintiff has sufficiently pled allegations in his Complaint to support a derivative liability theory for recovery and pierce TOS's corporate veil.

In North Carolina, courts apply the "instrumentality rule," to "disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 329 S.E. 2d 326, 330 (N.C. 1985). Under the "instrumentality rule,"

a corporation will be held liable for the torts of another corporation over which it "exercises actual control . . . operating the latter as a mere instrumentality or tool." *Id.* (quoting *B-W Acceptance Corp. v. Spencer*, 149 S.E.2d 570, 575 (N.C. 1966) (internal quotation marks omitted)). In determining whether the corporate veil should be pierced, courts should consider the following non-exhaustive factors: (i) "inadequate capitalization;" (ii) "non-compliance with corporate formalities;" (iii) "complete domination and control;" (iv) "excessive fragmentation;" (v) "non-payment of dividends;" (vi) "insolvency of the debtor corporation;" (vii) "siphoning of funds by the dominant shareholder;" (viii) "non-functioning of other officers or directors;" and (ix) "absence of corporate records." *Id.* at 332.

In addition to Plaintiff's allegation that "TOS is the alter-ego of SPV and exists solely as an instrumentality of SPV," (ECF No. 4 ¶ 142), Plaintiff alleges the following: (i) that TOS was undercapitalized as reflected by financial statements received after he invested in TOS showing that, contrary to the representations made prior to his investment, SPV/TOS Managers had made no cash investments in TOS (*id.* ¶¶ 144–146); (ii) that "SPV and TOS disregarded corporate formalities by, among other things, holding themselves out as a joint entity when they obtained additional investment funds from [another investor] and commingling funds" (*id.* ¶ 149); (iii) "that TOS and SPV have . . . blurred the lines of their corporate forms" by agreeing that SPV would provide additional inducements to Landress in exchange for his investment in TOS, (*id.* ¶ 152); and (iv) that money was "funnel[led]" from TOS to SPV "and served as a conduit for the SPV/TOS Managers to unjustly enrich themselves and render TOS insolvent," (*id.* ¶ 150). The Court concludes that, at this stage, "it is plausible that [these] factual allegations . . . are 'enough to raise a right to relief [as to this

claim] above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). The Court therefore denies Defendants' motions to dismiss to the extent they are based on the theory of piercing the corporate veil.

For the reasons outlined herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Defendants' motions to dismiss, (ECF Nos. 15, 17, 19), are hereby GRANTED IN PART AND DENIED IN PART. The Court GRANTS Defendants' motions to the extent they seek entry of a stay of the proceedings thus, this action is hereby STAYED pending the resolution of James Mason's Chapter 7 bankruptcy action in the United States District Court, Eastern District of North Carolina, Case No. 14-07105-5-DMW. The parties are directed to notify the Court within 14 days following resolution of the pending bankruptcy action. Defendants' motions to dismiss are hereby DENIED as to all other matters.

This, the 21st day of March, 2017.


    /s/ Loretta C. Biggs
United States District Judge